Commonwealth *v.* Perry, Appellant.

538

Argued April 10, 1950.  Before DREW, C. J., STERN, STEARNE, JONES and BELL, JJ.

*J. Roy Lilley,* with him *William A. O'Connor, Wm. P. Wilson* and *Lilley & Wilson,* for appellant.

*C. Wayne Smyth,* District Attorney, with him *M. L. Epstein* and *W. G. Schrier,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, May 22, 1950:

Paul Francis Perry shot and killed his wife, and, being found guilty by a jury of first degree murder with the death penalty, now appeals on the sole ground that a certain statement included in the victim's dying declarations should not have been admitted in evidence.

Defendant and his wife had had marital differences. On the day of the homicide he had been drinking at a club; his wife was there also but with another group of friends. He returned to their home at about 1:00 A. M. In a confession which he subsequently made he stated that he went upstairs, got his rifle and a shell and then went down and waited for his wife to come home. When she entered, at about 3:30 A. M., he asked her where she had been driving the car at that hour of the night. She answered that that was for him to find

out. He reached for his gun and told her he would find out; he "worked the action of the gun; the gun went off" and she fell. His defense at the trial was that he had no intention of shooting his wife; that he did not know the gun was loaded; that he "just wanted to scare her"; that he did not remember pulling the trigger; that he did not intend to pull it; that his "finger or hand might have hit" it; that the shooting was accidental.

Mrs. Perry was taken to the hospital and between ten and eleven o'clock that same morning, after being informed as to the gravity of her condition, which she said she realized, and after being told that she might die within the next 24 hours and that the chances were that she would not recover, she made some dying declarations. She stated to one of the resident physicians and to an interne that when she entered the house she saw her husband in the room and also a gun near the radio; she turned, went to the kitchen, came back and started to go upstairs, when suddenly her husband shot her. The interne asked her "Was this an accident, Mrs. Perry?" She replied: "No, it was planned." Shortly thereafter the Chief of Police interrogated her and in answer to his questions she stated that when she walked into the house the gun was "ready" by the radio, that she went into the kitchen to get a drink of water and then turned to go upstairs and that that is when he shot her. Mrs. Perry died a day or two later.

Dying declarations are restricted to the circumstances immediately attending the homicide; they are not admissible if they relate to former and distinct transactions and embrace facts or circumstances not immediately illustrating or connected with the declarant's death: *Commonwealth v. Spahr*, 211 Pa. 542, 543, 60 A. 1084, 1085. To be admissible they must recite only facts to which the declarant would have been allowed to testify if on the witness stand under oath; therefore they must be based on the declarant's observations and not be

merely expressions of opinion which are the result of reflection or reasoning upon matters preceding the murder: *Commonwealth v. Fugmann,* 330 Pa. 4, 16, 17, 198 A. 99, 106.

The learned trial judge evidently had in mind these standards of admissibility for in his charge to the jury he told them that, if they decided that Mrs. Perry's statement, "No, it was planned", was a mere conclusion on her part based upon her prior relations with the defendant, they must reject it altogether; on the other hand, if they found that it was because of what she then and there saw that she realized that the shooting was not accidental, they might give the statement the weight to which they considered it entitled. While at first blush it might seem to have been merely an expression of opinion on Mrs. Perry's part it could well have been based upon what she observed at the very moment of the shooting,—the gun being "ready" by the radio, the defendant waiting up for her at that time of night, the manner in which he levelled the gun, the very expression of his face as the gun was fired. As pointed out in Wigmore on Evidence, 3rd ed. vol. V, sec. 1447: ". . . since the declarant is here deceased, it is no longer possible to obtain from [her] by questions any more detailed data than [her] statement may contain, and hence [her] inferences are not in this instance superfluous, but are indispensable." In *Commonwealth v. Peyton,* 360 Pa. 441, 446, 449, 62 A. 2d 37, 39, 41, the declarant explained how her husband had shot her; at first she said it was accidental, but afterwards, when asked by a detective if it was accidental or on purpose, she replied, "On purpose." It was held that this statement was based, not upon surmise, but upon observation, since she was in a position to judge from what she observed through her senses whether the shooting was done intentionally or otherwise, and therefore it was proper to admit the statement in evidence as a dying declaration.

The judgment and sentence are affirmed.